630 F.2d 630
 105 L.R.R.M. (BNA) 2568, 89 Lab.Cas. P 12,273
 FAITH GARMENT COMPANY, Division of Dunhall Pharmaceutical,
Inc., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD and International Ladies'
Garment Workers Union, AFL-CIO, Respondent,
Respondent-Intervenor.
 No. 79-1987.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 10, 1980.
Decided Sept. 18, 1980.
 
 Hugo Swan, Jr., Fort Smith, Ark., for petitioner.
 
 
 1
 Susan Lynn Mandle, Atty., Washington, D.C., for respondent, respondent-intervenor.
 
 
 2
 Before HEANEY and ARNOLD, Circuit Judges, and OVERTON,* District Judge.
 
 
 3
 OVERTON, District Judge.
 
 
 4
 This case is before the Court on Faith Garment Company's petition for review of an order of the National Labor Relations Board. The Board has cross-petitioned for enforcement of its order. We affirm the Board's order and grant enforcement of it.
 
 
 5
 Faith Garment Company, a division of Dunhall Pharmaceutical, Inc., is located in Gravette, Arkansas, and manufactures children's clothing, pharmaceutical smocks, and vacuum bag filters.
 
 
 6
 On January 5, 1978, International Ladies Garment Workers' Union, AFL-CIO, hereinafter the Union, began an organizational campaign among production employees at the Faith Garment plant. A representative election was held on March 31, 1978, which the Union lost by one vote. Charges filed before the election alleging unfair labor practices and subsequent challenges to the election were consolidated for a hearing before an Administrative Law Judge.
 
 
 7
 Following the hearing, the Administrative Law Judge concluded that Faith Garment had violated §§ 8(a)(1), (3), (4), and (5) of the National Labor Relations Act. The Board adopted the findings of the Administrative Law Judge and his proposed remedies.
 
 
 8
 The specific findings of the Board challenged by Faith Garment are as follows:
 
 
 9
 (1) The Company violated § 8(a)(1) of the Act by photographing employees while they were distributing union literature at the plant gate;
 
 
 10
 (2) The Company violated § 8(a)(1) of the Act by conducting a surveillance of a union meeting;
 
 
 11
 (3) The Company violated § 8(a)(1) and (3) of the Act by discharging employee Stella Reynolds;
 
 
 12
 (4) The Company violated § 8(a)(1) and (3) of the Act by discharging, suspending and issuing warnings to employee Nancy Spiers;
 
 
 13
 (5) The Company violated § 8(a)(1) and (4) of the Act by retaliating against Nancy Spiers after she testified at a Board hearing;
 
 
 14
 (6) The Company violated § 8(a)(5) by refusing to bargain with the Union; and
 
 
 15
 (7) The Company violated § 8(a)(1) of the Act by announcing a pension plan for employees on the day before the election.
 
 
 16
 Faith Garment challenges also that portion of the Board's remedy which directs the Company to bargain collectively with the Union.
 
 
 17
 This Court finds that all of the Board's findings are supported by substantial evidence, that the Board did not abuse its discretion in issuing the bargaining order, and that only the last finding and the propriety of the relief warrant any discussion.
 
 Announcement of the Pension Plan
 
 18
 The record indicates that in December, 1977, the Dunhall pension plan was expanded to include employees of Faith Garment. Pursuant to Internal Revenue Regulations, on March 15, 1978, Dunhall made its first contribution to the plan on behalf of Faith Garment employees. At about the same time, Monte Staha, Dunhall president, notified Faith Garment Plant Manager, Duffy, that his employees were covered by a pension plan. In addition, Mr. Staha began a series of phone calls to the trustee of the plan requesting certificates for eligible employees and insisting that the certificates be delivered in time for the employee meeting scheduled for March 30, 1978, the day before the election.
 
 
 19
 On March 30, 1978, the day before the representative election, Staha and Duffy discovered that the certificates erroneously indicated membership in a profit sharing plan rather than the pension plan. Staha and the trustee recommended that the certificates not be distributed. Duffy, however, proceeded to announce the pension plan coverage and distribute the erroneous certificates at the plant meeting at which time he urged the employees to vote against the Union.
 
 
 20
 It is undisputed that the decision to grant the pension benefits was made prior to the onset of the organizational campaign. The focus in the present case is on the announcement of the pension plan to employees. The Board found that Faith Garment had orchestrated the announcement with the intention of interfering with the employees' free choice in the election in violation of § 8(a)(1) of the Act.
 
 
 21
 The First Circuit has held that the announcement of benefits during an organizational campaign establishes a prima facie case of a § 8(a)(1) violation. The burden then shifts to the employer to justify the timing of the announcement. N. L. R. B. v. Rich's of Plymouth, Inc., 578 F.2d 880 (1st Cir. 1978); N. L. R. B. v. Styletek, Division of Pandel-Bradford, 520 F.2d 275 (1st Cir. 1975).
 
 
 22
 Here, as in Rich's, the employer offered evidence to show the timing and manner of the announcement was consistent with the customary business practice. Witnesses for Faith Garment testified that in April of the preceding year management had exerted extra effort to present similar certificates at a sales meeting of Dunhall Pharmaceutical. Faith Garment also emphasizes the fact that Plant Manager Duffy was not even aware of the pension plan until the middle of March.
 
 
 23
 We believe the Administrative Law Judge and the Board were justified in finding that this evidence was insufficient to justify the timing of the announcement. A single similar incident does not establish a customary business practice, especially where one announcement is made at a sales meeting and the other is made at a meeting called for the purpose of urging employees to reject a union.
 
 
 24
 Even if the First Circuit's analysis is not employed, the Board's finding remains valid. In Kellwood Co., Ottenheimer Bros. Manufacturing Division v. N. L. R. B., 411 F.2d 493 (8th Cir. 1969), this Court held that even where the decision to grant benefits is above reproach, "the timing, the content and the manner" of a benefit announcement may constitute a violation of § 8(a)(1). Id. at 497. Here, the pension plan had been in effect since December. The Company called the trustee of the plan three times in a two week period to insure delivery of the certificates. Although Faith Garment claims to have always placed importance on the presentation of certificates, the importance was not so great as to prevent the distribution of misprinted certificates without comment on the error. The announcement and presentation of the certificates were made during an anti-union speech the day before the election. These facts provide substantial support for the Board's finding that the purpose of the announcement was to cause the employees to reject the Union.
 
 Issuance of a Collective Bargaining Order
 
 25
 Faith Garment claims the Board abused its discretion in issuing a collective bargaining order. It is Faith Garment's position that any unfair labor practices on its part were minor and had a minimal effect on the election process.
 
 
 26
 In N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the Court upheld the power of the Board to issue bargaining orders where union majority strength is shown to have existed and the unfair labor practices have tended to "undermine majority strength and impede the election process" to the extent that the Board believes traditional remedies may not erase the coercive effects of past practices. Id. at 614, 89 S.Ct. at 1940.
 
 
 27
 The Board found that on February 4, 1978, the Union enjoyed majority status by virtue of authorization cards signed by 37 of Faith Garment's 56 production employees. Based on its findings that Faith Garment had committed a series of unfair labor practices from January, 1978, through that summer, the Board found that it was uncertain that traditional remedies would remove the effects of the conduct.
 
 
 28
 We are unable to characterize the practices in question as minor and of minimal effect. Where the practices include surveillance of union activities and meetings, discharge of pro-union employees, reprisals for pro-union employees and those who testify at Board hearings, and the announcement of benefits the day before the election, we find no reason to disagree with the Board's determination of an appropriate remedy.
 
 
 29
 Enforcement granted.
 
 
 
 *
 The Hon. William R. Overton, United States District Judge for the Eastern District of Arkansas, sitting by designation